RECEIVED
AUG 2 7 2008
OFFICE OF U.S. DISTRICT JUDGE
BRUCE S. JENKINS

FILED
U.S. DISTRICT COURT
2008 AUG 29 P 12: 17
DISTRICT OF UTAH
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JASON KAAS,<br><br>　　　　Plaintiff,<br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>　　　　Defendant. | **MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL**<br><br>Case No. 1:07CV00128-BSJ<br><br>Judge Bruce S. Jenkins |

Plaintiff, Mr. Jason Kaas, appeals the denial of his claim for Supplemental Security Income by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). For the reasons outlined below, the Commissioner's decision is REVERSED and REMANDED.

## I. STANDARD OF REVIEW

The Commissioner's decision is reviewed to determine whether the factual findings are supported by substantial evidence and whether the relevant legal standards have been correctly applied. Daniels v. Apfel, 154 F.3d 1129 (10th Cir. 1998), citing Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a mere scintilla but less than preponderance. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389 (1971).

## II. DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining disability. The five steps are: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals the criteria for an impairment listed in Appendix 1 of 20 C.F.R. Subpt. P; (4) whether the impairment prevents the claimant from performing his past relevant work; and (5) whether the impairment prevents the claimant from performing other work. The burden is on the Plaintiff to meet the first four steps. However, if Plaintiff does carry his burden in the first four steps, the burden shifts to the Commissioner to establish that there are other jobs existing in a significant number in the national economy which Plaintiff is capable of performing.

In the present case, the Commissioner, through the written decision of the ALJ, held at step one that Mr. Kaas had not engaged in SGA since the amended alleged onset date of his disability of December 10, 2003. At step two, he found that he had severe impairments of a personality disorder NOS with dependent features, and attention deficit/hyperactivity disorder and a learning disorder. (Tr. 16).

At step three, the ALJ found that none of Mr. Kaas's impairments met or equaled a Listing. (Tr. 17). At step four, he found no medical evidence to support or imply that Mr. Kaas would be precluded or prevented from performing the level of work activity identified in the ALJ's RFC assessment. However, the ALJ found that transferability of job skills was not an issue as Mr. Kaas's past relevant work was unskilled. (Tr. 21-22). At step five, he found that he could make a vocational adjustment to other work. (Tr. 22).

The ALJ's findings at steps one and three have not been disputed by Mr. Kaas. However, Mr. Kaas disputes the ALJ's ultimate determination on the basis of the following errors:

1. the ALJ's failure to adequately consider Mr. Kaas's social problems;
2. inappropriate rejection of Dr. Smith's GAF score and assessment of Mr. Kaas's social problems; and
3. an improper credibility determination.

As set forth below, I agree with Mr. Kaas on the second point and that such error warrants a reversal of the Commissioner's denial and remand for further proceedings.

At step five of the sequential evaluation, the burden shifts to the Commissioner to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite the identified limitations. Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998). One way the ALJ can meet that burden is by taking the testimony of a vocational expert. However, the vocational expert's testimony must come in response to an accurate hypothetical. "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991), *quoting* Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir.1990).

Although the ALJ in the case at bar did call a vocational expert to testify at the hearing, the ALJ only considered a portion of his testimony – the portion that came in response to an incomplete hypothetical. The hypothetical was incomplete because it did not incorporate social limitations that are established by substantial evidence. The medical providers that have opined

regarding Mr. Kass' social functioning have all opined to serious social limitation. Lay witnesses have indicated the same.

On June 21, 2006, the claimant underwent a level II psychological evaluation by Dr. Brian L. Smith, Ph.D. (Tr. 253-63). Dr. Smith administered a battery of tests and conducted a clinical interview. He diagnosed Mr. Kaas with attention deficit/hyperactivity disorder, combined type, and personality disorder NOS with schizoid, schizotypal, and paranoid features. He assessed a global assessment of functioning (GAF) score of 40-45, indicating a serious level of impairment. (Tr. 260-61).

Regarding functional limitations, Dr. Smith began by noting a "pervasive pattern of detachment from social relationships and a restricted range of expression of emotions in interpersonal settings." (Tr. 261). As examples, he noted that Mr. Kaas almost always chooses solitary activities; has little, if any, interest in having sexual experiences with another person; takes pleasure in few, if any, activities; and lacks close friends or confidants other than first degree relatives. (Tr. 261).

Dr. Smith next noted a "pervasive pattern of social and interpersonal deficits marked by acute discomfort with, and reduced capacity for, close relationships." (Tr. 261). As examples, he noted that Mr. Kaas has odd thinking; has suspiciousness or paranoid ideation; has behavior appearance that is odd, eccentric, or peculiar; lacks close friends or confidants other than first degree relatives; and has excessive social anxiety that does not diminish with familiarity and tends to be associated with paranoid features rather than negative judgments about self. (Tr. 261).

4

Regarding occupational limitations, Dr. Smith noted that Mr. Kaas: has an average IQ ability; has questionable motivation to complete either education or job training tasks; may not submit to reasonable rules, regulations and requirements of work environment or to the reasonable supervision of a supervisor; does not have a driver's license; would have difficulty developing close working relationships with peers or supervisors; would likely require supervision in the work environment to consistently be successful in completing tasks that are within ability level; would likely do better in employment where he is required to work with things more than people; would have lowered speed in performing work tasks; may have difficulty maintaining interest, motivation and concentration on both academic and work tasks of low natural interest; and would likely use physical complaints to avoid work responsibilities or to minimize underlining irresponsible behavior. (Tr. 262).

Dr. Smith further noted that Mr. Kaas has the negative symptom of avolition, which is the inability to initiate and persist in goal directed activities. In addition, he has social/occupational dysfunction in that his work history, interpersonal relations, and self-care are markedly below normal expectation. (Tr. 263).

Dr. Smith noted earlier in the evaluation that Mr. Kaas had been delayed in speech development. (Tr. 254). According to multiple statements from the claimant's family members, which will be detailed below, this continues to be a problem at present. Dr. Smith also noted that Mr. Kaas has always been behind in his social development. Id. Again, this is a theme that permeates the lay witness statements.

Dr. Smith noted that the claimant has been consistently unemployed in the past 10 years. He had only had a few temporary jobs helping his friends. (Tr. 255). Perhaps more significantly, he noted that Mr. Kaas has never had a driver's license. He passed the written driver's education test, but did not pass the driving test. He expressed no interest in getting a license. (Tr. 255). Also significant, he noted that the claimant does not have a girlfriend and has never dated. He lives with his brother near his parents' home.[1] (Tr. 255).

Dr. Smith observed that Mr. Kaas was moderately overweight, had long hair and a bushy beard, was unkempt and disheveled, obviously had poor hygiene, and needed to be reminded about hygiene. (Tr. 256).

Dr. Smith noted that his thought processes were slower than normal and his judgment was rated as poor, as was his insight. (Tr. 257). His test performances also indicated problems staying focused on tasks involving sustained attention, short-term memory and concentration. (Tr. 258).

Dr. Smith was unable to obtain a valid MMPI-2 profile due to the fact that the claimant omitted answers to 93 of the questions. (Tr. 259). However, certain patterns emerged, which Dr. Smith felt were likely pertinent. The partial profile suggested a person that was likely to have a relatively poor self-concept, to be strongly dissatisfied with himself, but lacking the skills necessary to change the situation. It also suggested an individual that was not open and

---

[1] The fact that Mr. Kaas has reached the age of 29 (at the time of the hearing) without ever obtaining a driver's license, and showing no interest in dating, demonstrates a serious lack of emotional progression and maturity. As several family members have indicated, he seems to have the emotional maturity of a 12-year-old. Indeed, at a time in life when most people are 10 years into their careers (or have obtained college and graduate degrees), and have started their own families, Mr. Kaas is still preoccupied with model rockets, Matchbox cars and G.I. Joe action figures, Transformers, and such. (See, e.g., Tr. 81, 85, 87, 92, 148, 162, 200).

revealing; had low ego strength, lacked insight into his self-motivation and behavior and was ineffective in dealing with the problems of daily life. (Tr. 259). These findings are certainly consistent with the lay witness statements provided by the claimant's family members.

Dr. Smith described the claimant's profile, in part, as follows:

> These individuals are hypersensitive, rigid, stubborn, and often angry. They utilize projection as a primary defense mechanism and resist accepting personal responsibility. They have a definite "paranoid flavor" in their relationships even if there are no observable paranoid behaviors. These individuals have a strong need to place blame outside of themselves. Hence, they often experience conflict with others over blame, faultfinding, and determination of responsibility.
>
> The interpersonal relationships of these individuals are usually characterized by conflict and blaming others for their present circumstances and problems.
>
> Treatment: the prognosis is generally poor, since these individuals most often resist change and/or intervention. Their anger and hostility also make them difficult patients.

(Tr. 259). Again, while the doctor was unable to obtain a full profile, he felt that the foregoing description of the claimant's personality traits was likely pertinent. In addition, he noted that the information obtained during the interview with the claimant was believed to be mostly reliable. (Tr. 260).

Mr. Kaas has also undergone a consultative examination with Elizabeth Allen, Ph.D., on August 26, 2003. (Tr. 197-201). Dr. Allen performed an IQ test, but did not conduct the battery of tests later conducted by Dr. Smith. Other than the IQ scores, Dr. Allen's opinions were based on her interview with the claimant and she does indicate a number of significant limitations.

Dr. Allen noted that the claimant's expressive speech was characterized by mumbling, mispronunciation, unusual word usage and a limited vocabulary. (Tr. 197). This is an important

observation in light of the fact that the lay witness statements of record repeatedly indicate that the claimant has very significant difficulties communicating with others. The lay witness statements will be summarized below.

Dr. Allen explained that during his years in school, Mr. Kaas was teased and bullied by his classmates, and had problems sitting still in the classroom and paying attention in school. He was also forced into sexual activities on one occasion by an older male peer when he was 11. (Tr. 198). Regarding his ability to adapt and relate to others, Dr. Allen noted that Mr. Kaas is socially inept, dependent, taken advantage of by his friends, and rejected by peers. (Tr. 199). She noted that he was incapable of managing his own funds independently. (Tr. 200). He was unable to demonstrate abstract reasoning abilities. When provided three different proverbs, and asked to interpret them, he was unable to do so. (Tr. 200).

Dr. Allen noted that Mr. Kaas has never had a driver's license, does not budget his finances or maintain a bank account. For recreation, he plays videogames, listens to music, builds model rockets, and somewhat obsessively collects Legos and Matchbox cars. (Tr. 200). Dr. Allen's primary diagnosis was a personality disorder NOS with dependent features. She assessed a GAF score of 60-65, indicating a moderate level of impairment. (Tr. 201).

The record contains a letter written by a vocational rehabilitation counselor, informing the claimant that he is eligible for vocational rehabilitation services because he has a personality disorder and attention deficit/hyperactivity disorder. (Tr. 179). The counselor acknowledged: "[t]his disability affects your ability to work by having low motivation to accomplish any tasks or contact with people, you also struggle to focus and complete assignments." (Tr. 179).

The record also contains a number of lay witness statements written by the claimant's family members and a few acquaintances which support significant social difficulties.

The hypothetical relied on by the ALJ does not incorporate all of Mr. Kaas's limitations, particular those caused by his social difficulties, as established by substantial evidence. If a vocational expert is utilized on remand, the ALJ shall provide a hypothetical to the expert that incorporates all of the claimant's limitations; properly taking into account the social limitations set forth in the record, with regard to such work functions as, including but not limited to, interacting appropriately with others, requesting and responding to assistance, accepting and responding to criticism, getting along with peers without distracting or exhibiting behavioral extremes and maintaining socially acceptable behavior, neatness and cleanliness; and incorporating such where supported by the evidence.

### III. CONCLUSION

Based upon the above analysis, IT IS HEREBY ORDERED that pursuant to sentence four of 42 USC § 405(g) the Commissioner's decision denying Mr. Kaas's applications for Disability Insurance Benefits and Supplemental Security Income is REVERSED and REMANDED for further administrative proceedings. IT IS FURTHER ORDERED that judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the United States Supreme Court's decision in Shalala v. Schaefer, 509 US 292, 296-302 (1993).

DATED this 29th day of August, 2008.

Judge Bruce S. Jenkins
United States District Court Judge